**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

BRYANT A. BROWNE,
    *Plaintiff*,

    v.

NICK RODRIGUEZ; NICOLE
THIBEAULT; DEPUTY HINES; RAY
MONROE; CAPTAIN PEREZ; RACHEL
BLONDIN; and COMMISSIONER
QUIROS,
    *Defendants*.

No. 3:21-cv-329 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Bryant Browne ("Plaintiff") is currently incarcerated at Osborn Correction Institution in

Somers, Connecticut. He has sued Connecticut Department of Correction ("DOC")

Commissioner Angel Quiros; former Osborn Warden Nick Rodriguez; Deputy Warden Gerald

Hines; Unit Manager Captain Perez; Industries Manager Ray Monroe; and retired Laundry

Supervisor Ranee Blondin (collectively, "Defendants"), alleging violations of his civil rights

under 42 U.S.C. § 1983. Compl., ECF No. 1; Initial Review Order, ECF No. 11 ("IRO").

Mr. Browne was a laundry worker at Osborn in the spring of 2020 as the Coronavirus

Disease 2019 ("COVID-19") pandemic spread through Connecticut. *See* Pl.'s L.R. 56(a)2

Statement of Facts ¶ 30, ECF No. 31-8 ("Pl.'s SMF"). He argues that Defendants' failure to

adequately protect laundry workers from COVID-19 amounted to unconstitutional conditions of

confinement and caused him to contract the disease. *See* Compl. at 6.

Defendants have filed a motion for summary judgment, arguing that Mr. Browne failed to

exhaust his claims, that his Eighth Amendment claims fail as a matter of law, and that

Defendants are entitled to qualified immunity. *See* Defs.' Mot. for Summ. J. at 1, ECF No. 25 ("Mot.").

For the following reasons, Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**.

Mr. Browne's claim for injunctive relief against Commissioner Quiros is dismissed as moot.

Defendants' motion for summary judgment on the grounds that Mr. Browne failed to exhaust his claims; that his claims fail as a matter of law; and that Defendants are entitled to summary judgment is denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

Mr. Browne was incarcerated at Osborn, where he worked in the laundry shop, from January to May of 2020. Pl.'s SMF ¶¶ 1, 30.

#### 1.  Osborn's COVID-19 Response

In March 2020, DOC officials initiated an emergency lockdown at Osborn in an effort to limit the spread of COVID-19 among inmates and staff. *Id.* ¶ 8. Around the same time, Osborn officials began implementing additional measures to prevent the spread of COVID-19. *See* Thibeault Decl. ¶ 4, ECF No. 25-7. These measures included community release options to reduce the inmate population, suspending visits and group activities, and temporarily suspending showers and telephone use. Pl.'s SMF ¶ 10.

---

[1] Defendants' motion for permission to file a Local Rule 56(a)1 statement of material facts in excess of twelve pages, ECF No. 25-2, is **GRANTED**. *See* D. Conn. L. Civ. R. 56(a)1 ("The Local Rule 56(a)1 Statement shall be no longer than twelve (12) double-spaced pages, absent leave of the Court granted for good cause shown.").

The parties dispute, however, how effectively these and other prevention measures were actually implemented. Defendants state that Osborn inmates were issued cloth masks by April 6, 2020; that staff were required to wear masks as of April 3, 2020; that staff were subject to COVID-19 screening before entering the facility; that inmates were provided with soap and cleaning supplies; and that inmates' sleeping areas were cleaned regularly. Defs.' L. R. 56(a)1 Statement ¶¶ 11–16, ECF No. 25-3 ("Defs.' SMF"). Meanwhile, Mr. Browne presents affidavits from himself and other laundry workers stating that they were not provided with masks, soap, or cleaning supplies; that staff did not observe the mask requirement; that staff with obvious COVID-19 symptoms were permitted to enter the facility; and that Mr. Browne's sleeping area was never cleaned by anyone except himself. *See* Pl.'s SMF ¶¶ 11–16; Pl.'s Additional Material Facts ¶¶ 1–3, ECF No. 31-8 ("Pl.'s AMF"); Browne Decl. ¶¶ 5, 7–8, 9, 19, 27, ECF No. 31-1; Walker Decl. ¶¶ 5, 24, ECF No. 31-2; Lee Decl. ¶ 5, ECF No. 31-4.

Defendants also state that prison officials implemented a procedure for quarantining inmates who tested positive for or displayed symptoms of COVID-19. Defs.' SMF ¶ 18. According to Defendants, an inmate who displayed COVID-19 symptoms would be sent to the medical unit immediately for testing and quarantined from other inmates in Osborn's F-Block for fourteen days. *Id.* ¶¶ 19–20. If the inmate's test came back positive, he would be moved to a hospital unit until he could be transferred to Northern Correctional Institution ("Northern"), which had been designated by DOC as the facility for medical isolation of COVID-positive inmates. Pl.'s SMF ¶¶ 20–21.

Mr. Browne disputes that these procedures were followed, stating that he and others routinely came into contact with inmates who displayed COVID-19 symptoms at Osborn. *See id.* ¶¶ 18–19, 23; Pl.'s AMF ¶ 18; Browne Decl. ¶¶ 15, 17; Lee Decl. ¶ 16.

### 2.  Mr. Browne's Transfer to E-Block and COVID-19 Infection

In April 2020, Osborn officials began segregating inmate workers to ensure the continuous operation of essential functions, such as laundry and food services. Pl.'s SMF ¶ 28. As a laundry worker, Mr. Browne was moved to Osborn's E-Block at the beginning of April. *See id.* ¶¶ 30–31.

At the time, Mr. Browne and the other laundry workers were living in H-Block, where the cells had windows and solid metal doors. *See* Pl.'s AMF ¶¶ 10–12; Hackett Decl. ¶ 17, ECF No. 31-3. In E-Block, meanwhile, the cells had bar doors that were open to the outside hallway. Pl.'s AMF ¶ 12; Lee Decl. ¶ 14.

According to Mr. Browne, the laundry workers informed Deputy Warden Thibeault and Captain Perez of their concern that these features left inmates in E-Block at greater risk of exposure. Walker Decl. ¶ 14. Before their transfer, the laundry workers also told these Defendants that there were, in fact, inmates in E-Block who were exhibiting COVID-19 symptoms. *See* Pl.'s AMF ¶ 14; Hackett Decl. ¶ 20; Wade Decl. ¶ 14. The laundry workers state that they knew about the conditions in E-Block because the kitchen workers were already being housed there. *See* Hackett Decl. ¶ 20; Wade Decl. ¶ 14.

The laundry workers also raised concerns about their access to personal protective equipment ("PPE") while working in the laundry shop. *See* Pl.'s AMF ¶ 23. They state that they began requesting PPE such as Tyvek suits, face shields, N95 masks, and boots beginning in March 2020 but did not receive any of this equipment until May. *See id.*; Browne Decl. ¶ 29; Walker Decl. ¶ 25; Hackett Decl. ¶ 29; Lee Decl. ¶ 25; Wade Decl. ¶ 24. Furthermore, although Defendants state that laundry workers were provided with two cloth masks and a surgical mask

beginning on April 17, 2020, Mr. Browne states that he was not provided with a mask until May 2020, after he had contracted COVID-19. *See* Pl.'s SMF ¶ 17; Browne Decl. ¶ 9.

Mr. Browne tested positive for COVID-19 on May 7, 2020, and was transferred to Northern. Pl.'s AMF ¶ 24; Browne Decl. ¶¶ 30, 38.

### 3.  Mr. Browne's Grievances

Mr. Browne filed a Level 1 grievance on May 24, 2020. *See* Ex. B to Restrepo Decl., at 42–43, ECF No. 25-5. This grievance was returned without disposition because Mr. Browne failed to attempt informal resolution before filing the grievance. *See id.*; Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 11, ECF No. 25-1 ("Mem.").

When Mr. Browne re-filed this grievance on June 25, 2020, it was rejected because it had not been filed within 30 days of the occurrence or discovery of the cause of the grievance. *See* Restrepo Decl. ¶¶ 26–27.

Mr. Browne filed a second grievance on June 25, 2020, which was rejected as repetitive. *See id.* ¶¶ 28–29.

Mr. Browne filed a third grievance on December 21, 2020. This grievance was initially returned without disposition because it exceeded the maximum length permitted by the applicable administrative directive. *See id.* ¶¶ 30–31. When Mr. Browne re-filed this grievance, it was rejected because it had not been filed within 30 days of the occurrence or discovery of the cause of the grievance. *See id.* ¶ 31.

### B.  Procedural History

On March 12, 2021, Mr. Browne filed his *pro se* Complaint. Compl.

On December 17, 2021, Attorney Alexander Taubes entered an appearance on behalf of Mr. Browne. Notice of Appearance, ECF No. 9.

On January 3, 2022, the Court issued an Initial Review Order ("IRO"), permitting Mr. Browne's Eighth Amendment damages to proceed. *See* IRO at 21. The Court also ordered that Mr. Browne's Eighth Amendment claim for an injunction requiring that Mr. Browne be vaccinated for COVID-19 should proceed and directed the Clerk of Court to substitute Commissioner Quiros a defendant in his official capacity for former Commissioner Cook. *See id.* The Court dismissed Mr. Browne's remaining claims, including First Amendment retaliation and Fourteenth Amendment Equal Protection claims. *See id.* at 7, 21.

On March 3, 2022, Defendants answered the Complaint. Answer, ECF No. 21.

On August 19, 2022, Defendants filed a motion for summary judgment. Mot.

On October 7, 2022, Mr. Browne filed an objection to Defendants' motion for summary judgment. Pl.'s Obj. to Defs.' Mot. for Summ. J., ECF No. 31; Pl.'s Mem. of L. in Supp. of Obj. to Summ. J., ECF No. 31-7 ("Opp'n").

On October 20, 2022, Defendants filed a reply in support of their motion for summary judgment. Defs.' Reply to Pl.'s Obj. to Defs.' Mot. for Summ. J., ECF No. 33 ("Reply").

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.  DISCUSSION

Defendants argue that they are entitle to summary judgment because (1) Mr. Browne's claim for injunctive relief is moot; (2) Mr. Browne failed to exhaust his claims properly; (3) Mr. Browne's Eighth Amendment claims fail as a matter of law; and (4) Defendants are entitled to qualified immunity.

Other courts in this District have considered similar arguments in other cases brought by Osborn laundry workers. *See Nazario v. Thibeault*, No. 3:21-cv-216 (VLB), 2022 WL 2358504 (D. Conn. June 30, 2022); *Lee v. Cook*, No. 2:21-cv-399 (KAD), ECF No. 41 (Sept. 23, 2022) ("*Lee v. Cook* Tr.") (transcript of oral ruling on motion for summary judgment); *Hackett v. Rodriguez*, No. 3:21-cv-328 (VLB), 2022 WL 16949369 (D. Conn. Nov. 15, 2022). In each case, the court has largely denied the defendants' motion for summary judgment.

The Court will address each issue raised by Defendants' motion in turn.

### A.  The Claim for Injunctive Relief

In its Initial Review Order, the Court permitted Mr. Browne's Eighth Amendment claim for an injunctive order that Mr. Browne be vaccinated to proceed against Commissioner Quiros. IRO at 21.

Defendants contend that the Court should enter judgment for Commissioner Quiros on this claim because Mr. Browne has already received both doses of the Moderna COVID-19 vaccine as well as a booster. *See* Mem. at 5–6.

Mr. Browne notes in his opposition to Defendants' motion that he abandons his claim for injunctive relief.

Accordingly, the Court will dismiss at moot Mr. Browne's claim for injunctive relief against Commissioner Quiros. *See Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

### B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process, *Booth v. Churner*, 532 U.S. 731, 738 (2001).

The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that the inmate must comply with all "procedural rules," including filing deadlines,

required by the particular prison grievance system. *Id.* at 90–91. "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement may be excused, however, when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738). The Supreme Court has identified three types of circumstances in which an administrative procedure is unavailable and, therefore, need not be exhausted: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, defendants "bear the initial burden of establishing . . . that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59. "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from

correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Id.*

### 1.  Administrative Directive 9.6

The general inmate grievance procedure applicable to Mr. Browne's claims is set forth in Administrative Directive 9.6. *See* Ex. A to Restrepo Decl., at 9–22, ECF No. 25-5 ("A.D. 9.6").

A Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance. A.D. 9.6(6)(C). The grievance must include documentation of the inmate's written request to resolve the matter informally or an explanation why such documentation is not attached. *Id.* The Unit Administrator is required to respond in writing to a Level 1 grievance within thirty business days of his or her receipt of the grievance. A.D. 9.6(6)(I). The Unit Administrator may extend the response time by up to fifteen business days upon notice to the inmate on the prescribed form. A.D. 9.6(6)(J).

An inmate may appeal to Level 2 the Unit Administrator's disposition of a Level 1 grievance or the Unit Administrator's failure to dispose of the grievance in a timely manner. A.D. 9.6(6)(G), (I) & (K). A Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. A.D. 9.6(6)(K). An appeal of a Unit Administrator's failure to dispose of a Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. A.D. 9.6(6)(M).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. A.D. 9.6(6)(L).

### 2. Mr. Browne's Grievances

Defendants argue that Mr. Browne's grievances were untimely because he was aware of laundry workers' need for PPE by March 16, 2020 and was told that laundry workers would be transferred to e-Block on April 3, 2020. *See* Mem. at 10. Thus, according to Defendants, Mr. Browne was required to file a grievance by April 15, 2020, for claims involving PPE and by May 4, 2020, for claims regarding placement in different cells. *See id.* at 11; Reply at 6. Defendants also argue that, even if the grievance filed on May 24, 2020, were not untimely, it failed to comply with A.D. 9.6 because Mr. Browne did not attempt informal resolution before filing the grievance. *See* Mem. at 11.

Mr. Browne argues that the May 24 grievance was timely because he filed it within thirty days of learning that he had contracted COVID-19. *See* Opp'n at 2. Mr. Browne concedes that he did not attempt informal resolution as required by A.D. 9.6, but he argues that he is excused from compliance because the grievance process was unavailable to him under *Ross*. *See id.* at 3. Mr. Browne contends that he was relying on the grievance procedure set forth in the 2017 Inmate Handbook, which did not require informal resolution for an "emergency grievance." *See id.* at 3. Although the 2017 Handbook was no longer accurate, Mr. Browne states that it was the only one available to him. *See id.*; Pl.'s AMF ¶ 28. Thus, Mr. Browne argues, there is a genuine issue of material fact as to whether the current grievance procedure was unavailable.

The Court agrees.

First, the grievance filed on May 24, 2020, was timely because Mr. Browne filed it within thirty days of discovering that he was infected with COVID-19. A.D. 9.6 requires an inmate to file a grievance within thirty days of "the occurrence or discovery of the cause of the grievance." A.D. 9.6(6)(C). Mr. Browne's infection with COVID-19 directly caused the harm that he alleges

in this case. Thus, his infection with COVID-19 was "the occurrence" of the cause of his

grievance. The fact that this event also had antecedent causes, such as Defendants' alleged

failure to provide adequate PPE or Mr. Browne's transfer to E-Block, does not change this result.

Mr. Browne was able to appreciate fully the alleged consequence of Defendants' actions and the

basis for his claims in this case only after he contracted COVID-19. Because Mr. Browne

discovered that he was infected with COVID-19 on May 7, 2020, the May 24 grievance was

timely.

Second, Mr. Browne has raised a genuine issue of material fact as to whether the

grievance process set forth in A.D. 9.6 was unavailable to him.

Because Defendants have satisfied their initial burden of establishing that grievance

procedures existed, Mr. Browne must show that these procedures were unavailable. *See Hubbs*,

788 F.3d at 59 ("If the defendants meet this initial burden, administrative remedies may

nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered

a nominally available procedure unavailable as a matter of fact."). In *Ross*, the Supreme Court

clarified that a grievance procedure may be unavailable when it is "so opaque that it becomes,

practically speaking, incapable of use," 578 U.S. at 643, or when "the correctional facility's staff

misled the inmate as to the existence or rules of the grievance process," *id.* at 644 (quoting *Davis

v. Hernandez,* 798 F.3d 290, 295 (5th Cir. 2015)). Since *Ross*, district courts in this Circuit have

generally concluded that "grievance procedures are not 'unavailable' simply because a plaintiff

was unaware of the existence of the procedure," although the Second Circuit has not resolved

this question definitively. *Martinez v. Payne*, No. 3:20-cv-231 (JAM), 2021 WL 3493616, at *5

(D. Conn. Aug. 7, 2021).

Here, however, Mr. Browne does not allege merely that he was unaware of the proper

procedure. Instead, he argues that Osborn officials effectively misled him by failing to provide

him with an updated copy of the Inmate Handbook or any notice that the 2017 edition was

outdated. *See* Opp'n at 5; Pl.'s AMF ¶ 33. Thus, this is not a case in which an inmate "may have

been 'unaware' of the proper procedure but . . . could not show that the defendants

misrepresented the procedure or otherwise misled him." *Hackett*, 2022 WL 16949369, at *7

(citing *Martinez*, 2021 WL 3493616). Instead, Mr. Browne filed his grievance in accordance

with the 2017 Handbook, which purported to set forth the correct grievance procedure. *See* Ex. B

to Restrepo Decl., at 45 (statement by Mr. Browne that he followed the instructions in the

"3/2017 edition" for "filing an 'emergency grievance'" when he submitted his grievance on May

24, 2020).

The Seventh Circuit has held that "'unavailability' extends beyond 'affirmative

misconduct' to omissions by prison personnel, particularly failing to inform the prisoner of the

grievance process." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). While the Second

Circuit has not addressed this specific question, another court in this District adopted the Seventh

Circuit's reasoning in denying a similar summary judgment motion. *See Lee v. Cook* Tr. at 61;

*see also Hackett*, 2022 WL 16949369, at *7 ("The DOC's failure to ensure that Hackett received

the operative Inmate Handbook not once, but twice, is functionally equivalent to affirmatively

misrepresenting the administrative remedies."). The Court agrees that updating a grievance

procedure without adequately notifying an inmate of this update makes that procedure

unavailable under *Ross*.

Defendants respond that it "strains credulity" that Mr. Browne and the other laundry

workers would rely solely on the 2017 Handbook when the current AD 9.6 "is readily available

to any inmate." Reply at 5. But Defendants cite no evidence in support of this assertion. They do not describe when or how the updated grievance procedure was distributed to the inmates or offer an explanation as to how Mr. Browne might have retained an outdated handbook. Thus, when viewing the evidence in the light most favorable to Mr. Browne, Osborn officials provided Mr. Browne with the 2017 Handbook and later updated the grievance procedure without notifying him of the new procedure.

Alternatively, there is a triable question of fact as to whether Osborn's grievance procedure was opaque under *Ross*. Defendants have not put forward evidence explaining how updated grievance procedures are distributed to inmates, whether Mr. Browne received the current A.D. 9.6, or whether there is a procedure for removing outdated editions of the Inmate Handbook. It is therefore possible, as another court concluded on a similar summary judgment record, "that multiple versions of the grievance process could be floating around the prison." *Hackett*, 2022 WL 16949369, at *7. If this were true, "no reasonable person would be able to 'discern or navigate' the actual grievance process." *Id.* (quoting *Ross*, 578 U.S. at 644).

Accordingly, the Court will deny Defendants' motion for summary judgment on exhaustion grounds.[2]

### C.  The Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, which includes punishments that "involve the unnecessary and wanton

---

[2] Because the outdated Inmate Handbook raises a genuine dispute of material fact, the Court need not at this time determine the impact of Mr. Browne's assertion that materials for filing a grievance were not available while he was quarantined at Northern after he contracted COVID-19. *See* Browne Decl. ¶¶ 31–32, 40; *see also Lee v. Cook* Tr. at 62 ("[P]laintiff has averred that while he was held at Northern following his COVID diagnosis, he was not provided so much as a pencil with which to write or submit any grievances, and that he was denied access to grievance forms when he made inquiry. The Court does not at this juncture, because it need not, determine the implications of these allegations on the exhaustion issue, having found a genuine issue of material fact as to whether he was provided the current version of Directive 9.6.").

infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Although the Eighth Amendment does not require "comfortable" prison conditions, prison officials must nonetheless "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

To prove a claim for deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must prove both an objective and a subjective element.

To satisfy the objective element, the inmate must establish that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of life necessities or "human needs" or posed "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834; *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

To meet the subjective element, an inmate must establish that the defendant acted with "a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The official must have known of a "substantial risk" to the plaintiff's health or safety and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Thus, proof of "mere negligence" is insufficient, and an official may avoid liability if he or she "responded reasonably to the risk." *Id.* at 835, 844.

In the Court's Initial Review Order, it construed Mr. Browne as asserting separate Eighth Amendment claims based on (1) Defendants' failure to safeguard him from exposure to COVID-19; (2) the cell conditions in E-Block; (3) his lack of access to showers; and (4) the medical care Mr. Browne received at Northern after he tested positive for COVID-19. *See* IRO at 21.

16

In his opposition to Defendants' motion, Mr. Browne clarifies that his allegations regarding the conditions of the E-Block cells, his lack of access to showers, and the conditions at Northern are not separate claims. Instead, according to Mr. Browne, these allegations are relevant to show the damages that he suffered after he contracted COVID-19 as a result of Defendants' wrongful acts. Thus, the key issue on summary judgment is whether Defendants were deliberately indifferent to unconstitutional conditions of confinement that caused Mr. Browne to contract COVID-19.

## 1. The Objective Element

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). "It is . . . undisputed—and, indeed, by now common knowledge—that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 440 (D. Conn. 2020). In light of this knowledge, courts within this Circuit have recognized that COVID-19 can pose a substantial risk of serious harm to inmates if prison officials fail to take adequate measures against the spread of the virus. *See Jones v. Westchester County*, No. 20-cv-8542 (PMH), 2022 WL 1406591, at *3 (S.D.N.Y. May 4, 2022) (collecting cases); *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020) (collecting cases). Thus, the issue in this case is whether Mr. Browne's evidence establishes a substantial risk of serious harm, considering the preventive measures that Osborn has taken. *See Gibson v. Rodriguez*, No. 3:20-cv-953 (KAD), 2021 WL 4690701, at *5 (D. Conn. Oct. 7, 2021).

Defendants argue that Mr. Browne cannot establish an objectively serious risk of substantial harm because the policies and protocols implemented at Osborn sufficiently reduced the risk posed by COVID-19. Mem. at 20. They contend that Mr. Browne, like the plaintiff in

*Gibson*, has not put forward sufficient evidence showing that there was an inherent risk of contracting COVID-19 at the facility. *See id.*

Mr. Browne argues in response that there is a genuine issue of material fact as to whether the protocols required by DOC were not properly implemented or enforced at Osborn. *See* Opp'n at 6–7.

The Court agrees.

Relying on declarations from Deputy Warden Thibeault and DOC Chief Medical Officer Byron Kennedy, Defendants state that they implemented various measures to protect inmates from COVID-19. *See, e.g.*, Defs.' SMF ¶ 9. These included providing guidance about staying safe from COVID-19; providing inmates with masks, soap, and cleaning supplies; requiring that staff wear masks; screening staff for COVID-19 before entering the facility; regularly cleaning inmates' sleeping areas; and quarantining inmates when they exhibited COVID-19 symptoms. *See id.* ¶¶ 11–19.

In response, Mr. Browne puts forward affidavits from himself and five other laundry workers who deny that these specific measures were actually implemented or properly observed. *See, e.g.*, Pl.'s AMF ¶¶ 1–3, 18, 22; Browne Decl. ¶ 4 (no safety guidance); Walker Decl. ¶ 5 (no cloth masks until end of April); Browne Decl. ¶ 9 (no surgical masks until May); Hackett Decl. ¶¶ 5, 11 (no soap or cleaning supplies until May); Wade Decl. ¶ 23 (staff did not comply with mask requirement); Browne Decl. ¶ 19 (staff members with obvious symptoms); Hackett Decl. ¶ (no cleaning of sleeping areas); Brown Decl. ¶ 21 (exposed to symptomatic inmates), ECF No. 31-6. The laundry workers also dispute Defendants' assertion that COVID-positive inmates were not housed in E-Block, stating that there were numerous symptomatic inmates in E-Block both

before and after the laundry workers were transferred there. *See, e.g.*, Browne Decl. ¶¶ 17, 20–21, 24, 26.

The Court cannot resolve this conflicting evidence on summary judgment. There is a genuine dispute of material fact as to whether and how effectively policies and procedures for preventing the spread of COVID-19 were actually implemented at Osborn from March to May of 2020. Even assuming that all of the policies not specifically disputed by Mr. Browne—such as suspending visits and group programming—were properly implemented, the Court cannot conclude that these policies sufficiently mitigated the risk of serious harm to Mr. Browne. The evidence submitted by Mr. Browne also distinguishes this case from *Gibson*, in which the plaintiff put forward "no admissible evidence" to contest the defendants' evidence that they had implemented preventative measures that were based on guidance from medical staff and Centers for Disease Control ("CDC") recommendations. *See Gibson*, 2021 WL 4690701, at *6.

## 2.   The Subjective Element

To satisfy the subjective element, Mr. Browne "must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution'" by acting with deliberate indifference. *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, Mr. Browne must show that each Defendant "personally knew of and disregarded an excessive risk" to his health and safety. *Id.*

Defendants argue that they did not intentionally disregard the risk posed by COVID-19 because they implemented reasonable policies grounded in medical advice to reduce the spread of the disease. *See* Mem. at 21. With respect to Mr. Browne's claims that COVID-19 prevention

measures were not properly enforced, Defendants argue that they did not ignore or approve these lapses. *See id.* at 24.

Mr. Browne argues in response that he and other laundry workers informed Defendants about their lack of PPE, the sick inmates housed in E-Block, and other enforcement lapses. *See* Opp'n at 7–9. He further contends that Deputy Warden Thibeault and Captain Perez were required to tour E-Block, and that they would have observed the sick inmates present there. *See id.* at 9. Thus, Mr. Browne contends, there is a genuine dispute of material fact as to the subjective element of his Eighth Amendment claims.

The Court agrees.

Considering the evidence in the light most favorable to Mr. Browne, each Defendant was personally aware of and disregarded the risks posed to Mr. Browne by inadequate COVID-19 prevention measures. When Deputy Warden Thibeault and Captain Perez informed the laundry workers about the transfer to E-Block, laundry workers objected that there were sick inmates in E-Block. *See* Hackett Decl. ¶ 20.[3] After their transfer, inmates also complained to Warden Rodriguez and Captain Perez about the presence of sick inmates and staff members' failure to wear masks. *See id.* ¶ 13; Walker Decl. ¶ 23. Mr. Browne also asserts that these dangerous conditions would have been obvious to Deputy Warden Thibeault and Captain Perez when they toured E-Block. *See* Browne Decl. ¶ 15; Walker Decl. ¶ 23.

The laundry workers, meanwhile, state that their concerns were either dismissed or ignored, and Defendants point to no evidence that they acted to address the laundry workers' complaints. Laundry worker Joseph Hackett states that he "never saw any staff being told by other staff members to wear their masks" and "never saw any staff disciplined for refusing to

---

[3] Mr. Hackett asserts that the laundry workers had heard that there were symptomatic inmates in E-Block from kitchen workers who were already housed there. Hackett Decl. ¶ 20.

wear their mask." Hackett Decl. ¶ 13. According to laundry worker Jeffrey Walker, Captain

Perez said that he would look into Mr. Walker's complaints about sick inmates in E-Block but

never provided a response. *See* Walker Decl. ¶ 23. Thus, Mr. Browne has raised a triable

question of fact as to whether Warden Rodriguez, Deputy Warden Thibeault, and Captain Perez

were aware of and disregarded lapses in the enforcement of Osborn's COVID-19 policies that

posed a serious risk to Mr. Browne's health.

      With respect to Deputy Warden Hines, Manager Monroe, and Supervisor Blondin, Mr.

Browne's subjective element argument relies on a meeting these Defendants held with laundry

workers in March 2020. *See* Pl.'s AMF ¶ 4. When the laundry workers requested additional PPE,

Defendants responded, "we don't have that here."[4] *Id.* Mr. Browne asserts that the laundry

workers were not provided with PPE such as Tyvek suits, face shields, N95 masks, or boots until

after they had all been exposed to and contracted COVID-19. *Id.* ¶ 23. He concedes, however,

that CDC guidelines did not require that laundry workers be given these types of PPE. *See* Pl.'s

SMF ¶ 56.

      The Court need not resolve whether Defendants' failure to provide this equipment

amounts to deliberate indifference under the Eighth Amendment because, viewing the evidence

in the light most favorable to Mr. Browne, Defendants also failed to provide more basic PPE

such as cloth and surgical masks. As noted above, the laundry workers state that they were not

provided with cloth masks until late April and did not receive surgical masks until May, after

they had contracted COVID-19. *See* Walker Decl. ¶ 5; Browne Decl. ¶ 9. Defendants do not

---

[4] Defendants object that these and other statements within the laundry workers' declarations are hearsay because they incorporate conversations that the declarant supposedly had with a DOC official. Reply at 2–3. These objections are without merit. As another court in this District has noted, states such as these "are not hearsay because they were made by DOC employees in the scope of employment." *Kramer v. Dep't of Corr.*, No. 3:15-cv-00251 (RNC), 2019 WL 4805152, at *8 n.17 (D. Conn. Sept. 30, 2019) (citing Fed. R. Evid. 801(d)(2)).

argue that their purported failure to provide these masks was based on medical guidance that the laundry workers would be safe without them.

In fact, Defendants appeared to recognize the importance of masks and other PPE because, according to Mr. Browne, they provided this equipment to correctional staff, hallway workers, and hospital workers while denying them to the laundry workers. *See* Pl.'s AMF ¶ 7; Hackett Decl. ¶¶ 14–15. The Court recognizes that DOC officials faced difficult decisions in prioritizing the distribution of scarce PPE. *See* Mem. at 23; *see also Carolina v. Feder*, No. 3:20-cv-658 (SRU), 2021 WL 268854, at *8 (D. Conn. Jan. 26, 2021) ("In normal times, courts must accord substantial deference to the professional judgment of prison officials on matters of prison administration. In attempting to prevent and stem COVID-19 outbreaks, prison officials are plainly entitled to that substantial deference." (internal quotation marks and citations omitted)). But in light of the disparity in treatment between laundry workers and other inmates and staff, the Court cannot conclude at this stage that these workers were adequately protected by the policies implemented by Defendants. And because there is also a triable question of fact as to whether Defendants were aware of these disparities and nonetheless failed to act, the Court cannot grant summary judgment to Defendants on the subjective element of Mr. Browne's Eighth Amendment claim.

Accordingly, the Court will deny Defendants' motion for summary judgment on the merits of Mr. Browne's Eighth Amendment claims.

### D.  Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

A right is clearly established if, "at the time of the challenged conduct . . . every

'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft*

*v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483

U.S. 635, 640 (1987)). A plaintiff need not point to a prior decision that is directly on point, "but

existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

"Because the focus is on whether the officer had fair notice that her conduct was unlawful,

reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v.*

*Hughes*, 138 S. Ct. 1148, 1152 (2018).

"The qualified immunity standard is 'forgiving' and 'protects all but the plainly

incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d

Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)). It thus "affords

government officials 'breathing room' to make reasonable—even if sometimes mistaken—

decisions." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v.*

*Millender*, 565 U.S. 535, 553 (2012)). "[I]f a reasonable officer might not have known for certain

that the conduct was unlawful—then the officer is immune from liability." *Ziglar v. Abbasi*, 137

S. Ct. 1843, 1867 (2017). Qualified immunity does not apply, however, when it is obvious that

no reasonably competent officer would have taken the actions of the alleged violation. *See*

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Defendants argue that they are entitled to qualified immunity because it was not

clearly established at the time of their conduct that following the recommendations of the CDC

and other public health officials violated clearly established law. *See* Mem. at 33.

23

In response, Mr. Browne argues that it was clearly established that prison officials have an affirmative obligation to protect inmates from infectious diseases. *See* Opp'n at 11 (citing *Jolly*, 76 F.3d at 477). He contends that there is a genuine issue of material fact as to whether Defendants violated this obligation by failing to provide Mr. Browne with adequate PPE and failing to properly enforce other preventative measures. *See id.* at 11–12.

The Court agrees

The qualified immunity analysis in this case turns on whether Defendants' actions in response to the COVID-19 pandemic were reasonable efforts to comply with their obligation to protect inmates from the serious risk of harm posed by the disease. *See Hackett*, WL 16949369, at *11 ("Even at the beginning of the pandemic in March 2020, a reasonable official would have realized that COVID-19 is a serious infectious disease from which prison officials had a duty to protect inmates."). But this question cannot be answered without resolving conflicting evidence as to whether some policies—such as mask and quarantine requirements—were actually implemented and whether other policies—such as the transfer to E-Block and the denial of PPE—were, in fact, reasonable.

Thus, as other courts in this District have concluded on similar records, qualified immunity cannot be resolved on summary judgment in this case. *See id.* ("The Court agrees with the Plaintiff and finds that the qualified immunity analysis turns on disputed facts. Because there are genuine disputes of material fact as to whether Defendants complied with the preventive measures in place at Osborn, the Court denies Defendant's motion for summary judgment on the issue of qualified immunity."); *Lee v. Cook* Tr. at 71 ("If there was no dispute as to what the defendants' response to the virus was, I would agree that the Court could determine, as a matter

of law, whether qualified immunity applies. But the myriad of factual disputes discussed already preclude any such determination at this stage of the litigation.").

Accordingly, the Court will deny Defendants' motion for summary judgment on qualified immunity grounds.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**.

Mr. Browne's claim for injunctive relief against Commissioner Quiros is dismissed as moot.

Defendants' motion for summary judgment on the grounds that Mr. Browne failed to exhaust his claims; that his claims fail as a matter of law; and that Defendants are entitled to summary judgment is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of February, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE